## PELICAN & DIVES MINING CO. V. SNODGRASS.

1. One who makes a discovery of mineral and runs a tunnel thereon, but does no other act towards completing the statutory location, and for the period of four years does no labor of any kind, acquires no interest in the vein as against intervening rights. Nor can he at the end of the four years perform the remaining acts necessary to a statutory location and have the inception of the claim date from the original discovery, there being intervening rights.

2. The party who first discovers a vein and posts his discovery notice, following such acts with the remaining acts necessary to a valid location within the time prescribed by law, holds the vein as against a subsequent discoverer who succeeds in first completing all the requisite acts of location.

3. The relocator of an abandoned mining claim has the same length of time to perform each of the acts of location subsequent to discovery as the original locator.

*Appeal from District Court of Clear Creek County.*

DURING the years 1875–76 what is known in the record as the "Ontario Tunnel" was run by one Lewis. The tunnel was about one hundred feet in length, and disclosed a vein of mineral at its breast. The last fifty feet and the vein found were in territory which at the time was unappropriated. About one hundred feet of drifting was also done by Lewis at or near the inner end of the tunnel. He then took no further steps towards perfecting a mining location. Appellee Snodgrass located a claim near the Ontario tunnel, called the "Nadenbusch," and it appears that both Snodgrass and Lewis were under the impression that the Nadenbusch claim covered the apex of the lode disclosed in the tunnel. Snodgrass made his application and secured a patent for the Nadenbusch claim; Lewis failing to oppose the proceeding by adverse proceedings or protest. In February, 1881, Snodgrass went into the drift leading from the Ontario tunnel and did a little work. He also leased the vein existing therein to other parties, but the lease was soon after thrown up. At this time he still believed the apex of the vein to be

covered by the Nadenbusch patent; but upon making surveys with a view to sinking a shaft from the surface down to the drift, he discovered that the apex was outside the Nadenbusch side line, and upon vacant ground. In March following he ran an open cut from the surface, and on the 24th, at the breast thereof, intersected the vein which was shown in the Ontario tunnel. On the same day he posted his discovery notice and staked a claim as the Cross lode. He then sunk a discovery shaft, and June 3d filed his location certificate. He also took peaceable possession of the tunnel, and thereafter placed a door across the same where the vacant territory began, and fifty feet from the entrance. Several days after Snodgrass commenced his open cut, Lewis began sinking a shaft from the surface, and on the day succeeding Snodgrass' discovery of mineral he also reached the vein. He then posted a discovery notice and proceeded to complete his location of the Contention lode. His location certificate was filed prior to that of Snodgrass, but it was dated March 25th, and fixed the date of discovery as December 14, 1876, when he disclosed mineral in the Ontario tunnel, instead of March 25, 1881, when he reached the vein in his shaft. The next day, March 26th, Lewis conveyed by deed to the appellant company. Thereafter the company applied for a patent to the Contention lode. Snodgrass filed an adverse claim and brought this suit in pursuance thereof. Upon trial, verdict and judgment were given for Snodgrass, and the company prosecuted this appeal. The remaining essential facts are sufficiently stated in the opinion.

Messrs. MORRISON and FILLIUS, for appellant.

Mr. LUKE PALMER, for appellee.

HELM, J. The Ontario tunnel was not located in pursuance of the law relating to tunnel-sites. Lewis failed to follow up his discovery of mineral therein with any ef-

fort whatever towards completing the statutory location of a mining claim.   With the possible exception of one day's work, he performed no labor in the tunnel for a period of nearly four years, although he sometimes used it as a store-house for mining tools.   Under these facts we are of opinion that, as against intervening rights, he acquired no interest whatever in the disputed ground by virtue of the tunnel in question.   He could not, four years after discovering the vein in this tunnel, post his discovery notice, erect boundary stakes, file his location certificate, and have the inception of his claim, there being intervening rights, relate back to December 14, 1876, the date of such discovery.

The negotiations of Snodgrass with either Lewis or Seddon for the privilege of using the Ontario tunnel in working the Nadenbusch, a patented mine belonging to Snodgrass, are matters of no consequence in this litigation.

Neither does the mistake, which seems to have been mutual on the part of Snodgrass and Lewis, in supposing that the apex of the vein disclosed in the Ontario tunnel was covered by the Nadenbusch patent, affect the case.

We do not agree with counsel for appellant in their position that it was the duty of Snodgrass, upon discovering this mistake, to inform Lewis, and give him an opportunity to first locate the ground in controversy.   As suggested by counsel for appellee, under the evidence there is no more reason for holding that Snodgrass was estopped from locating the Cross lode without notice to Lewis, than there would be for saying that, had Lewis first ascertained the mutual mistake, it would have been his duty to inform Snodgrass, and give the latter precedence in securing the coveted vein. · We therefore discard the Ontario tunnel, and the other matters connected therewith, above mentioned, from further consideration in the case.

Snodgrass first disclosed a vein of mineral upon the ground in controversy by excavating from the surface.

He immediately posted his discovery notice, marked the boundaries, and, in the course of seven or eight days, completed his discovery shaft. Within three months from the date of discovery he filed his location certificate for record in the proper office. It is true that Lewis completed his discovery shaft, and recorded his location certificate, at earlier dates than did Snodgrass. But these acts did not overcome the advantage obtained by Snodgrass through his prior discovery.

It is earnestly argued by counsel for appellant that the claim of Snodgrass was a relocation, and that the statute fixing sixty days and three months for sinking the discovery shaft and filing the location certificate, respectively, did not apply to the same. The learned counsel insist that these acts, in connection with relocations, must be performed within a reasonable time; and that, under the circumstances disclosed in this case, seventy days, the period existing between Snodgrass' discovery and the filing of his certificate for record, was not a reasonable time. In response to the foregoing argument, we have this to say: that, in the *first* place, there never having been a location of the ground in controversy, it cannot be treated as an abandoned claim; hence the location of Snodgrass should be regarded as an original and not a relocation. But, *secondly*, counsel are mistaken in their view of the law regarding relocations. Construing the relocation provision in connection with the other location statutes, we are satisfied that the legislature intended to place the original discoverer and the relocator, so far as possible, upon precisely the same footing. That body doubtless desired to give the latter sixty days, after finding the vein (technically, perhaps, there could not be a second *discovery* thereof) and erecting his "new location stake," to sink a discovery shaft, and three months within which to record his certificate. Such is the construction of the law already announced by this court. *Armstrong v. Lower*, 6 Colo. 393.

It follows from the foregoing conclusions concerning the facts and the law, that the rights of Snodgrass, by virtue of his location of the ground in controversy, must be held superior to those of appellant acquired through the attempted location of Lewis. It is not necessary for us to separately discuss the specific assignments of error, as the questions presented thereon by appellant have been fully answered.

The judgment will be affirmed.

*Affirmed.*